FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2015 NOV 18 PM 2:58

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES OF AMERICA

v.                                              CASE NO. 2:15-cr-159-FtM-99CM

MARIA VICTORIA LOPEZ,
                                                18 U.S.C. § 1349
                                                18 U.S.C. § 981(a)(1)(c) – forfeiture
                                                28 U.S.C. § 2461– forfeiture

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**
**(Conspiracy)**

**A. Introduction**

At all times material to this Indictment:

1.   Immokalee Pain and Rehab, LLC ("Immokalee Pain") was a chiropractic health care clinic that operated in Immokalee, in the Middle District of Florida.

2.   Immokalee Pain submitted claims via the United States Postal Service to automobile insurance companies in Florida and elsewhere for payment for services purportedly rendered to accident victims treated at Immokalee Pain.

3.   Florida Statute Sections 400.990-400.995 (the "Florida licensing statute") required that all chiropractic clinics, such as Clinic 1, either be licensed by the state or be "wholly owned by one or more licensed health care practitioners" and that "one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws."

4.   The Florida licensing statute also required clinics that were not wholly owned by one or more licensed health care practitioners to pay a licensing fee, consent to a two-level background screening, and to submit the following operational information:

      a.    the name, residence and business address, phone number, social security number, and license number of the medical or clinic director of the licensed medical providers employed or under contract with the clinic;

      b.    A listing of services to be provided either directly by the applicant or through contractual arrangements with existing providers;

      c.    The number and discipline of each professional staff member to be employed; and,

      d.    Comprehensive proof of financial ability to operate.

5.    The Florida licensing statute further provided, in pertinent part:

> All charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed…but that is not so licensed, or that is otherwise operating in violation of [the Florida licensing statute], are unlawful charges, and therefore are noncompensable and unenforceable.

6.    Defendant Maria Victoria Lopez, also known as Vicky, was a resident of Glades County, Florida, worked in billing and customer service at Immokalee Pain and was not a licensed health care practitioner.

## B. The Conspiracy

7.    Beginning by at least October 2014, and continuing through in and around December 2014, in the Middle District of Florida and elsewhere,

**MARIA VICTORIA LOPEZ,**

the defendant herein, knowingly and willfully combined, conspired, confederated and agreed with others to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

## C. Manner and Means of the Conspiracy

8.    The manner and means by which the defendant and others sought to accomplish the objects of the conspiracy included, among others, the following:

    a. It was a part of the manner and means of the conspiracy that one or more of the conspirators created and operated Immokalee Pain in Immokalee, Florida.

    b. It was further a part of the conspiracy that one or more of the conspirators would and did use the name and license information belonging to a licensed health care practitioner as the owner of Immokalee Pain in documents filed with the Florida Department of State, Division of Corporations, when such was not the case.

    c. It was further a part of the conspiracy that the conspirators would and did fraudulently submit and cause to be submitted to automobile insurance companies multiple claims that were unlawful under the Florida licensing statute, in that, the chiropractic health clinic submitting the claims was not properly licensed under Florida law nor exempt from the Florida licensing statute.

    d. It was further a part of the conspiracy that the conspirators would and did submit and cause to be submitted to automobile insurance companies multiple false and fraudulent claims for unnecessary services rendered to purported accident victims who, in reality, had only participated in a staged automobile accident in exchange for compensation.

    e. It was further a part of the conspiracy that conspirators coached purported accident victims to make false statements to insurance investigators regarding treatment and the receipt of illegal compensation for that treatment.

    f. It was further a part of the conspiracy that the conspirators would and did send and receive, and cause to be sent and received, mail matter via the Postal Service or private or commercial interstate mail carriers during and in furtherance of the conspiracy.

  g. It was further a part of the conspiracy that the conspirators would and did engage in multiple meetings, perform acts, and make statements, to promote and achieve the object of the conspiracy and to hide and conceal the purpose of the conspiracy, including evading the Florida regulatory structure and disclosure obligations, and the acts committed in furtherance thereof.

  All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461.

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, upon conviction of conspiracy to commit mail fraud in violation of Title 18, United States Code, Section 1349, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of the gross proceeds of the offense, approximately $54,321.70.

4. If any of the property described above, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

_____
Date

A. LEE BENTLEY, III
United States Attorney

By: _____
David G. Lazarus
Assistant United States Attorney
Trial Counsel

By: _____
Michael C. Baggé-Hernández
Assistant United States Attorney
Asset Forfeiture

By: _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division